UNITED STATES DISTRICT COURT
DISTRICT OF NEW HAMPSHIRE

Green Tree Servicing, LLC

    v.                                    Civil No. 09-cv-191-JL
                                           Opinion No. 2011 DNH 056
United States of America *et al.*

**OPINION AND ORDER**

    This case raises several questions about the availability of
equitable relief to restore a mistakenly discharged mortgage to a
position of priority over subsequent federal tax liens.  The
plaintiff, Green Tree Servicing, LLC, claims that its predecessor
erroneously recorded a discharge of its mortgage on a parcel
owned by defendants Dana E. and Kristi L. Ricker, and seeks to
restore that mortgage to its original priority over intervening
liens filed by the Internal Revenue Service.

    Green Tree originally brought this action in Rockingham
County Superior Court against the Rickers and the IRS.  Acting on
behalf of the IRS, the government removed the case to this court
under 28 U.S.C. § 1444.  That statute authorizes the removal of
actions brought against the United States under 28 U.S.C. § 2410,
which in turn authorizes suits to "quiet title" to real property
in "which the United States has or claims a mortgage or other
lien."  The court of appeals has held that the "meaning and
scope" of § 2410 encompasses an action, like this one, seeking to

establish the priority of the plaintiff's mortgage over the government's tax lien, and thus creating federal subject-matter jurisdiction here.  Progressive Consumers Fed. Credit Union v. United States, 79 F.3d 1228, 1231-33 (1st Cir. 1996).

Green Tree has moved for summary judgment, see Fed. R. Civ. P. 56, arguing that it is entitled to equitable reinstatement of the mortgage to its seniority over the tax liens as a matter of law because the discharge was recorded in error, and the government did not rely on the discharge in recording the liens. The government objects on a number of grounds, including that federal law establishing the priority of tax liens bars the equitable reinstatement of Green Tree's mortgage to a superior position and, in any event, Green Tree is not entitled to that relief under New Hampshire law (or at least has not shown that entitlement as a matter of law).

Following oral argument, Green Tree's motion for summary judgment is denied.  As explained fully infra, while the court of appeals has rejected the argument that federal law bars the equitable reinstatement of a mortgage to a position of seniority over federal tax liens, see, Progressive, 79 F.3d at 1234-35, Green Tree has not conclusively shown that it is entitled to that relief under New Hampshire law which--though not as circumscribed as the government argues--"view[s] claims to circumvent the

established order of priority, through resort to equity, with

trepidation," Hilco, Inc. v. Lenentine, 142 N.H. 265, 267 (1997).

I.   **Background**

The following facts are stated in an affidavit by Green

Tree's "foreclosure manager," Ruth Hernandez, who purports to

derive her knowledge of them either from Green Tree's regularly

maintained business records or "from information transmitted by[]

a person with knowledge of the facts set forth in said records."

On October 9, 2001, the Rickers executed a mortgage on a parcel

located in Farmington, New Hampshire, in favor of Conseco Finance

Servicing Corp., which Green Tree says was its former name.[1]   The

mortgage, which secured a $118,000 debt evinced by a promissory

note, was recorded against the parcel in the Strafford County

Registry of Deeds the next day.

Green Tree says that the proceeds of the loan were used to

satisfy an "existing" debt from the Rickers to Conseco, which

arose from a mortgage loan extended earlier that same day.   This

was necessary, Green Tree explains, because the attorney who

---

[1]The government says that, following the bankruptcy of
Conseco's parent company, a third party purchased the parent's
equity interest in Conseco and reorganized it as Green Tree.   So
it is unclear whether Conseco is simply Green Tree's "former
name" as it claims, but the court will assume it is for purposes
of this motion.

handled the closing on its behalf "inadvertently misplaced" the documents executed as part of the earlier loan.  Green Tree also states that "[a]s part of any routine closing, the funds used to payoff the existing loan [from Conseco] were transmitted with a request for a discharge of lien."

As the government points out, Green Tree's foreclosure manager does not explain how she could have gleaned these facts from the company's business records, in light of the fact that the documents from the first loan were lost.  Nevertheless, documents submitted by the government (including a settlement statement) tend to show that, on October 9, 2001, Conseco made a loan to the Rickers for $118,800, all of which was disbursed to Conseco, and that Conseco later sent a letter to itself enclosing the disbursement check and asking for a release of its mortgage.

Green Tree further explains that, because the mortgage securing Conseco's first loan was never recorded, Conseco "inadvertently executed and recorded a satisfaction of the new mortgage" when, presumably, it was intending to record a satisfaction of its first mortgage instead.  Curiously, though, this did not happen until May 24, 2002--despite the fact that the first Conseco loan was satisfied as soon as the second Conseco

loan was made, on October 9, 2001 (more than 7 months earlier).[2]
Furthermore, as the government points out, Green Tree explains
the filing of the satisfaction differently in its complaint,
which alleges that, after the loan was assigned from Conseco to
Green Tree (which would not seem to have been necessary if, as
Green Tree says, Conseco simply changed its name to Green Tree)
Conseco "executed, in error, a satisfaction of mortgage, rather
than an assignment of mortgage and caused [it] to be recorded"
(quotation marks and capitalization omitted).

Green Tree further explains that the proceeds from the first
loan were used to pay off two mortgages on the parcel that had
been recorded in favor of the United States Department of
Agriculture.  But Green Tree has not provided any documents to
that effect, including either the mortgages or their discharges.[3]

---

[2]The court also notes that, in the versions of the note,
mortgage, and discharge attached to the complaint, the note and
the mortgage bear a "loan number" which is different from (and
higher than) the loan number contained on the discharge.  But the
loan number (as well as other identifying information, such as
the application number) has been blacked out on the versions of
the note, mortgage, and discharge that Green Tree filed with
Hernandez's affidavit, and also appears to have been redacted
from the settlement statement, discharge request, and check
submitted by the government.

[3]Green Tree has submitted "payoff statements" from the USDA
to the Rickers, but these simply show the total amount due on two
loans as of August 22, 2001; they do not show that the loans were
in fact repaid, whether out of the proceeds of Green Tree's loan
to the Rickers or otherwise.  For reasons that are not apparent

Beginning in 2000, the Secretary of the Treasury began making assessments, first against Dana Ricker, and then against both Rickers, for unpaid federal tax liabilities.  After the Rickers failed to satisfy those liabilities despite demands that they do so, the Secretary began recording notices of federal tax liens against the property.  The first of these notices was recorded in September 2004, but Green Tree says that it did not learn of them until September 2008, when it was notified of the government's claim that its liens were senior to Green Tree's mortgage.  As of January 2011, the Rickers owe more than $169,000 between them in federal tax liabilities secured by the liens. They also owe more than $114,000 to Green Tree.

## II.  **Applicable legal standard**

Summary judgment is appropriate where the "pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c)(2).  Under this rule, "[o]nce the moving party avers an absence of evidence to support the non-moving

---

to the court, Green Tree has not submitted any documents from the Strafford County Registry showing either the existence or the discharge of the USDA mortgages.

party's case, the non-moving party must offer 'definite, competent evidence to rebut the motion.'" Meuser v. Fed. Express Corp., 564 F.3d 507, 515 (1st Cir. 2009) (quoting Mesnick v. Gen. Elec. Co., 950 F.2d 816, 822 (1st Cir. 1991)).

Where, however, "the party moving for summary judgment bears the burden of proof on an issue, he cannot prevail unless the evidence that he provides on that issue is conclusive." EEOC v. Union Independiente de la Autoridad de Acueductos y Alcantarillados de P.R., 279 F.3d 49, 55 (1st Cir. 2002) (quotation marks omitted).  This standard applies to Green Tree's motion for summary judgment, since it bears the burden of proving "the existence and applicability of equitable principles" that entitle it to relief.  Chase v. Ameriquest Mortg. Co., 155 N.H. 19, 26 (2007) (quotation formatting omitted).


III. **Analysis**

"Federal tax liens do not automatically have priority over all other liens." United States ex rel. IRS v. McDermott, 507 U.S. 447, 450 (1993).  Instead, with some exceptions, "priority for purposes of federal law is governed by the common-law principle that the first lien in time is the first in right." Id. (quotation marks omitted).  Thus, "for a state created lien to take priority over a later assessed federal lien, it must be

'choate' or 'perfected' so that the identity of the lienor, the property subject to the lien, and the amount of the lien are established prior to the filing of the subsequent federal lien." Progressive, 79 F.3d at 1234-35 (further internal quotation marks omitted).  The perfection "of a state created lien is a matter of federal law and mirrors the standard applicable to liens asserted by the government," id. at 1235, i.e., among other things, perfection requires the filing of proper notice of the lien in the place designated by the law of the state where the property is situated, see 26 U.S.C. §§ 6323(a), (f).

Here, Conseco filed notice of its lien against the Rickers' property on October 10, 2001, when it recorded its mortgage in the place designated by New Hampshire law, i.e., the Strafford County Registry of Deeds.  This occurred prior to the recording of any notice of the federal tax liens and, as a result, would have given the mortgage priority over the liens as "first in time."  Green Tree's problem is that--also prior to the recording of the federal tax liens--Conseco recorded a discharge of its mortgage, which, at least under ordinary principles of priority, would make the liens senior to the mortgage.  See, e.g., Progressive, 79 F.3d at 1230.  To change this result, Green Tree seeks equitable relief in the form of "expunging the mistakenly

8

recorded discharge[] and reinstating the mortgage, restoring its priority over the tax liens" (capitalization corrected).

The government objects to this relief on two principal grounds. First, the government maintains that federal law, which, again, controls the priority of its liens here, does not allow the reinstatement of a discharged mortgage to a position of seniority over subsequently filed tax liens, regardless of whether state law would. Second, the government argues that, in any event, Green Tree has not demonstrated its entitlement to the equitable reinstatement of the mortgage under New Hampshire law. The court disagrees with the government's first point but agrees with its second point. As a result, Green Tree's motion for summary judgment must be denied.

**A.  Because New Hampshire law allows equitable reinstatement of a mortgage, federal law does not make that theory inapplicable here**

As the government points out, a federal tax lien "shall not be valid against any . . . holder of a security interest . . . until notice thereof has been filed," 26 U.S.C. § 6323(a), and, in relevant part, "[a] security interest exists at any time if, at such time, . . . the interest has become protected under local law against a subsequent judgment lien arising out of an unsecured obligation," id. § 6323(h)(1) (formatting altered).

9

The government argues that, once the discharge was filed, Conseco's mortgage no longer amounted to a "security interest" under § 6323(h)(1) because it was no longer protected under New Hampshire law against subsequent judgment lienors.  Thus, the government explains, at the time its liens were filed, the mortgage was no longer perfected under § 6323(a) (which, as just discussed, controls the perfection of both federal and state-law liens here, see, Progressive, 79 F.3d at 1235) and could therefore not have been "first in time."

There is no question that a mortgage that has been discharged as of record is ordinarily not "protected" against a lien arising subsequent to the discharge.  See Anatole Caron, Inc. v. Manchester Fed. Sav. & Loan Ass'n, 90 N.H. 560, 562 (1940); Restatement (Third) of Property: Mortgages § 7.3(a)(2) & cmt. b, at 476 (1997).  But, as the New Hampshire Supreme Court has observed, "[c]ases in which mortgages have been revived and enforced after their discharge of record are fairly common in this jurisdiction," Caron, 90 N.H. at 564, on the theory that when "the discharge of [an] original mortgage was made through mistake, it may be set aside and the mortgage given its original priority as against the [post-discharge] attachment."  Hammond v. Barker, 61 N.H. 53, 56 (1881); see also In re Chase, 388 B.R. 462, 468 (Bkrtcy. D.N.H. 2008) ("There is no question that [New

10

Hampshire] courts may equitably revive discharged mortgages.");
Int'l Trust Co. v. Davis & Farnum Mfg. Co., 70 N.H. 118, 119
(1900). The simple fact that the discharge of Conseco's mortgage
was recorded before the notices of the federal tax liens, then,
does not necessarily mean that the mortgage was not "protected"
against the liens as a matter of New Hampshire law so as to give
them priority over the mortgage as a matter of federal law.

In arguing to the contrary, the government relies heavily on
Haas v. IRS (In re Haas), 31 F.3d 1081 (11th Cir. 1994), a case
in which, similar to this one, federal tax liens were recorded
against a parcel after the allegedly erroneous discharge of a
prior mortgage. The bankruptcy court, applying Alabama law, had
restored the mortgage to its position of seniority over the
liens, ruling that "absent reliance by a subsequent creditor, a
mortgage that has been satisfied by mistake may be . . .
reinstated where such relief will not prejudice the rights of
third or innocent persons," and that "the IRS had not
detrimentally relied upon the erroneous release." Id. at 1083.
The Eleventh Circuit Court of Appeals reversed. Id.

First, the court "concluded that Alabama law would protect a
judgment creditor without notice from an erroneously released
lien," so that "any tax liens filed by the IRS before the time
the IRS had actual knowledge that [the mortgage] had been

11

released by mistake would prevail over" it.  Id. at 1086.
Second, the court ruled that even those liens filed after the IRS
learned of the erroneous nature of the discharge occupied a
senior position to the mortgage, as a result of "the hypothetical
judgment lien creditor rule."  Id. at 1090.  This test, which
Haas adopted as "consonant with the purposes of [§ 6323] of
promoting certainty and stability, thereby effectuating
Congressional intent to designate the appropriate position for
the IRS in the spectrum of priorities," places the IRS "in the
shoes of any subsequent judgment creditor, including the most
favorable shoes."  Id. at 1090 (footnote omitted).  Putting the
IRS in the shoes of "a class of judgment creditors without
notice" of the erroneous nature of the discharge, then, gave all
of its liens priority over the mortgage, even though, as an
actual (as opposed to a hypothetical) matter, the IRS knew full
well that the discharge was erroneous at the time some of those
liens were imposed.  Id.

     The government argues that applying the "hypothetical
judgment lien creditor test" here would result in the priority of
its liens "[b]ecause a class of New Hampshire judgment lien
creditors (those without actual notice of Green Tree's unrecorded
mortgage) could have had priority over Green Tree's 'mortgage.'"

12

But, as just discussed, New Hampshire law--unlike Alabama law, at least as interpreted by the Haas court--does allow for erroneously discharged mortgages to have priority over intervening judgment liens, even if the lienors were unaware that the discharge was erroneous.[4]  Indeed, the New Hampshire doctrine of equitable reinstatement "has frequently been applied" against "subsequent incumbrancers," unless they "have done or omitted to do an[] act relying upon the recorded discharge." Int'l Trust, 70 N.H. at 118.  Under New Hampshire law, then, equitable reinstatement can be appropriate where the subsequent lienor knew the discharge was a mistake (on the theory that he could not have relied upon it), but it is not limited to that circumstance.  It follows that there is no "class of judgment creditors" under New Hampshire law whose interest would have necessarily been superior to Conseco's mortgage, and that the "hypothetical judgment lien creditor" test is therefore unavailing to the government here.

---

[4]In suggesting otherwise, the government relies exclusively on cases dealing with unrecorded, or improperly recorded, mortgages and other encumbrances.  See, e.g., Amoskeag Bank v. Chagnon, 133 N.H. 11, 16 (1990) (holding that a judgment creditor, unlike a purchaser, does not take subject to a prior mortgage which has been improperly recorded).  But Conseco's mortgage was not "unrecorded"--it was recorded and then discharged as of record, and mistakenly so, according to Green Tree.  None of the cases on which the government relies to support its "hypothetical judgment lien creditor" argument address that situation, and the government's argument does not address the New Hampshire cases, discussed herein, which do.

The government also relies on Haas's alternative holding:
that "Treasury Regulations forbid application of a relation back
principle to award an unperfected lien priority over the tax
lien." 31 F.3d at 1091 (citing 26 C.F.R. § 301.6323(h)-1).
Those regulations state, in relevant part, that:

> a security interest is deemed to be protected against a
> subsequent judgment lien on–
>
> (A) The date on which all actions required under local
> law to establish the priority of a security interest
> against a judgment lien have been taken, or
>
> (B) If later, the date on which all required actions
> are deemed effective, under local law, to establish the
> priority of the security interest against a judgment
> lien.
>
> For purposes of this subdivision, the dates described
> in (A) and (B) of this subdivision (i) shall be
> determined <u>without regard to any rule or principle of
> local law which permits the relation back of any action
> to a date earlier than the date on which the action is
> actually taken</u>.

26 C.F.R. § 301.6323(h)-1(a)(2)(I) (emphasis added).  The Haas
court reasoned that, because "a court reinstating the mortgage
would permit the perfection of the mortgage to relate back to the
original date of recording," this regulation barred the use of
equitable reinstatement against federal tax liens, even if state
law would otherwise allow it. 31 F.3d at 1091.

But equitable reinstatement does not treat a mistakenly
discharged mortgage as if it had been perfected as of the date it

was originally recorded, when it was in fact perfected on some
later date.  After all, a mortgage is perfected on the date it is
originally recorded, even if it is subsequently discharged;
equitable reinstatement merely treats that discharge as a nullity
if it was the product of mistake and intervening lienholders have
not relied on it.  See Caron, 90 N.H. at 564; Int'l Trust, 70
N.H. at 119.  Equitable reinstatement, then, does not "perfect"
an otherwise unperfected mortgage.  Aside from Haas, this court
is not aware of any authority for the proposition that the
Treasury Regulation in question bars equitable reinstatement, or,
for that matter, equating equitable reinstatement with relation
back in any context.[5]

    Moreover, this aspect of Haas was squarely rejected by our
court of appeals in Progressive.  There, a mortgage on property
in Massachusetts was recorded before several federal tax liens,
but was discharged when the mortgagee refinanced the loan and

---

    [5]As the Supreme Court has explained, "the doctrine of
relation back . . . by process of judicial reasoning merges the
attachment lien in the judgment and relates the judgment lien
back to the date of [the pre-judgment] attachment."  United
States v. Sec. Trust & Sav. Bank of San Diego, 340 U.S. 47, 50
(1950).  This is the kind of "relation back" to which most courts
have applied 26 C.F.R. § 301.6323(h).  See, e.g., Smith Barney,
Harris Upham & Co. v. Connolly, 887 F. Supp. 337, 345 n.20 (D.
Mass. 1994); Assured Inv. & Loan, Inc. v. United States, 732 F.
Supp. 94, 96 (D. Kan. 1990); In re Jasper-O'Neil, 149 N.H. 87,
89-90 (2003).

recorded a new mortgage, resulting in "priority of the federal
tax liens, because of their recording dates, over the new
mortgage." 79 F.3d at 1230.  The mortgagee, like Green Tree
here, "sought a declaration that its mortgage had priority over
[the] properly recorded federal tax liens." Id.  In support of
this relief, the mortgagee invoked what the court of appeals
referred to as the Massachusetts law "doctrine of unjust
enrichment," i.e., "'where a mortgage has been discharged by
mistake, equity will set the discharge aside and reinstate the
mortgage to the position which the parties intended it to occupy,
if the rights of the intervening lienholders have not been
affected.'" Id. at 1236 (quoting N. Easton Co-op Bank v.
MacLean, 15 N.E.2d 241, 245 (Mass. 1938)).[6]  Because the
Massachusetts cases did "not concern federal tax liens," however,
the district court granted summary judgment to the government.
Id. at 1237.

The court of appeals reversed, explaining that "cases
involving the reinstatement of mortgages that have been
inadvertently discharged to the advantage of unintended and

_____

[6]This is plainly the same theory of equitable relief
recognized in New Hampshire.  See, e.g., Caron, 90 N.H. at 564.
The fact that the New Hampshire Supreme Court has not referred to
the theory as "unjust enrichment" does not make Progressive
inapplicable here, as the government seems to suggest.

16

unexpected beneficiaries are sufficiently analogous . . .
[w]hether or not federal tax liens are involved." Id.  The court
further observed that other "federal courts have held that the
doctrine is applicable where the federal government is involved;
and, in several instances, have restored state created liens to
their intended positions without regard for the United States'
potential loss of priority under federal law." Id. (citing
United States v. McCombs, 30 F.3d 310, 333 (2d Cir. 1994);
Dietrich Indus., Inc. v. United States, 988 F.2d 568, 573 (5th
Cir. 1993); and Han v. United States, 944 F.2d 526, 530 n.3 (9th
Cir. 1991)).  Progressive, then, expressly holds that federal law
allows the use of a state-law equitable doctrine to restore a
mistakenly discharged mortgage to its position of priority over
federal tax liens.  That holding is binding on this court,
whatever it may think of the decision to the contrary in Haas.

Despite Progressive, the government argues that federal law
does not contemplate the relief sought by Green Tree because it
does not amount to "subrogation" under 26 U.S.C. § 6323(i)(2).
That section provides that "[w]here, under local law, one person
is subrogated to the rights of another with respect to a lien or
interest, such person shall be subrogated to such rights for
purposes of any [federal tax lien]."  This argument is a red
herring, as Progressive makes clear.

There, emphasizing that § 6323(i)(2) "explicitly authorizes the application of local laws of subrogation and is silent as to the application of the doctrine of unjust enrichment," the government defended the district court's conclusion that "there is no basis upon which to presume the applicability of a common law doctrine," i.e., unjust enrichment, "not expressly provided for by the statute." 79 F.3d at 1235. But the court of appeals rejected that argument, explaining that "federal courts should presume applicability of state common law doctrines in determining the status of state created liens." Id. So, even if the doctrine Green Tree has invoked here does not qualify as "subrogation" under § 6323(i)(2), it still applies in deciding the relative priority of the discharged mortgage and the federal tax liens, as Progressive expressly holds.[7]   Contrary to the

-------------------------------------------------------------------

[7]The court therefore need not decide whether, as the government argues at length, Green Tree cannot invoke equitable subrogation because the funds from Conseco's erroneously discharged mortgage were used to satisfy the prior mortgage to Conseco, instead of a third party.  The court notes that Green Tree states--in one sentence in its summary judgment brief--that "since [Conseco] satisfied two prior mortgages of record in favor of the USDA" when it extended the first mortgage loan, "equity commands that [its] mortgage have priority" over the subsequent tax liens in the amount of the prior indebtedness to the USDA "at the very least."  But the court also need not decide at the moment whether that amounts to equitable subrogation under § 6323(i)(2) because Green Tree has not shown by admissible evidence that Conseco's first loan was used to pay off the USDA mortgages.  See note 3 and accompanying text, supra.

government's assertion, then, federal law does not render the
doctrine of equitable reinstatement inapplicable here.

### B.   Green Tree has not conclusively shown it is entitled to equitable reinstatement under New Hampshire law

The government also argues that, even if federal law does
not bar the equitable reinstatement of Green Tree's mortgage to a
position of priority over the federal tax liens, Green Tree is
not entitled to that relief under state law.[8]  As already
discussed at length, New Hampshire law recognizes that a

---

[8]The government argues that Green Tree's claim for equitable
reinstatement is moot because, even if this court enters a
judgment granting it, "that interest will not be perfected until
that judgment is recorded" and will therefore remain junior to
the government's existing liens.  This argument verges on the
nonsensical.  A judgment granting equitable reinstatement of an
erroneously discharged mortgage to a prior position over
subsequent liens would always be meaningless if the mortgage
nevertheless remained junior to the liens in this way.

The authorities cited by the government establish merely
that a judgment creating a lien is not effective against
subsequent lienholders until it is recorded.  But a judgment
granting equitable reinstatement does not itself create a lien.
It restores a lien previously created, but erroneously discharged
of record before subsequent liens were imposed.  The Bankruptcy
Court's decision in In re Chase, on which the government heavily
relies, holds only that a judgment granting equitable subrogation
"is not binding on subsequent attaching creditors" who perfect
their interests before the judgment is recorded.  388 B.R. at 469
(emphasis added).  It does not hold that, until it is recorded,
the judgment is not binding on the very parties against whom
equitable subrogation has been awarded, i.e., the intervening
creditors.  Again, if that were the law, the doctrines of
equitable subrogation and reinstatement would be pointless.

"'mortgage released through mistake may be restored in equity and given its original priority as a lien.'"  Hilco, 142 N.H. at 267 (quoting Caron, 90 N.H. at 564).  Nevertheless, the New Hampshire Supreme Court "view[s] claims to circumvent the established order of priority, through resort to equity, with trepidation," because that relief runs counter to the "essential purpose" of recording statutes in "ensuring notice to the public of property interests."  Id.  Whether to restore a mortgage that a plaintiff has discharged by mistake, then, "will depend upon the strength of the plaintiff['s] case for equitable intervention, and not upon any supposed weakness of the . . . equitable position" of the intervening lienholders.  Id. at 267-68.

    In moving for summary judgment, however, Green Tree focuses exclusively on the "supposed weakness" of the government's equitable position, emphasizing that it was not aware of the discharge when it recorded the tax liens and therefore could not have acted in reliance on it.  As Hilco holds, however, the availability of equitable restoration "focuses entirely upon the equitable arguments in favor of the plaintiff['s] position"; because an intervening lienholder "stand[s] upon his or her legal rights to establish priority, the weakness of his or her equitable position is irrelevant."  Id. at 268.  So Green Tree is not entitled to summary judgment simply because the government

did not rely upon the discharge when it filed its tax liens.
Other than that misplaced argument, Green Tree does not offer any
other reason why it should be entitled to equitable relief here.

That shortcoming aside, Green Tree has not established the
very premise of its equitable restoration claim, i.e., that the
discharge was in fact recorded by mistake.  Mistake "is a proper
ground upon which to relieve a party from the legal consequences
of his own act[] only when its effect is to disappoint the
intention of the doer by bringing about an unintended result,"
not "merely because it later appears to have been unwise."
Churchill v. Exeter Mfg. Co., 86 N.H. 415, 417-18 (1934).  Green
Tree has not conclusively shown that its discharge of the second
mortgage was mistaken in the sense that, at the time, it was
intending to accomplish some other objective.

Green Tree relies on Hernandez's statement that because the
first "mortgage was never recorded, Conseco inadvertently
executed and recorded a satisfaction of the new mortgage."  But
Hernandez does not say how she knows this.  She claims that all
of the facts set forth in her affidavit come from either
"business records, which are kept and maintained in the ordinary
course of business by" Green Tree, "or from information
transmitted by[] a person with knowledge of the facts set forth

in said records," but neither of these demonstrates the proper foundation for the statement at issue.

First, while "a corporate representative may testify and submit affidavits based on knowledge gained from a review of books and records," as this court has recognized, Philbrick v. eNom, 593 F. Supp. 2d 352, 364 (D.N.H. 2009) (quotation marks omitted), Green Tree does not say why its regularly maintained business records would contain an explanation of the reason a discharge was filed in a particular case, and that proposition is far from self-evident.  Second, if Hernandez learned this instead from "a person with knowledge of" it (which her affidavit acknowledges as the basis for at least some of its statements), then her account of it is inadmissible hearsay, as the government points out.  See Fed. R. Evid. 801.  Either way, her statement as to why the discharge was filed is inadmissible on summary judgment.  See Fed. R. Civ. P. 56(c)(4).

Furthermore, even if Hernandez's statement could be considered, it still would not conclusively establish that Conseco mistakenly discharged the second mortgage while intending to discharge the first.  As the government notes, Green Tree offered a different explanation for the discharge in its complaint, alleging that Conseco meant to file an assignment of the mortgage, rather than a discharge.  Furthermore, the

discharge was not filed until more than seven months after the
alleged substitution of the second mortgage for the first,
calling into question Green Tree's account that the discharge was
directed at the first mortgage.  Green Tree has not explained any
of these discrepancies, which leave a genuine issue as to whether
the second mortgage was in fact discharged by mistake at all.

Finally, there is also a genuine issue as to Conseco's
degree of fault in mistakenly discharging the mortgage.  The
government argues that, because Conseco was negligent, it is not
entitled to equitable restoration of the mortgage as a matter of
law.  While the court agrees that Conseco may have been negligent
(at least based on the record as it stands) the court disagrees
that any such negligence would automatically disqualify Green
Tree from obtaining equitable restoration here.

The government relies on Hilco, which ruled that the
Superior Court had erred in equitably restoring the plaintiffs'
mortgage to its original position of priority over that of
intervening lienholders because "it allowed the plaintiffs to be
shielded by equity from the consequences of their agent's
negligence in not discovering" the intervening lien.  142 N.H. at
268 (citing 55 Am. Jur. 2d Mortgages § [417] and 59 C.J.S.
Mortgages § 282(c)(2) (1949)).  The intervening lien there
existed as of record when the plaintiffs' predecessor banks

23

discharged their prior mortgages, and recorded new ones, as part of a refinancing, but was not discovered due to "the negligence of the bank's counsel." Id. at 266. This put the lien "first in line, unless, for some adequate reason, equity does not follow the law in this instance." Id. at 267 (quotation marks and bracketing omitted). The New Hampshire Supreme Court found no such reason. Explaining that, while "[i]gnorance and deceit are factors that in some circumstances . . . weigh[] the equities in favor of restoring a previously discharged mortgage," the court ruled that the plaintiffs could show neither, because they "had constructive notice" of the intervening lien by virtue of its proper recording. Id. at 268 (citing Caron, 90 N.H. at 564).

Here, though, the federal tax liens had not yet been recorded when Conseco discharged its mortgage, so it makes no sense to say that Conseco was on constructive notice of the liens, or negligent in failing to discover them, so as to bar equitable restoration of the mortgage here. This is not a case like Hilco, or Caron, where the mortgagee unquestionably intended to discharge its original mortgage in favor of a new one, but did not intend that the new mortgage take a junior position to intervening liens. Instead, Green Tree argues that Conseco never intended to discharge its mortgage at all.

24

In Caron, in fact, the New Hampshire Supreme Court specifically recognized this distinction.  The court explained that, in its prior cases where "a new mortgage [was] substituted in ignorance of an intervening lien," the mortgagee had suffered from "ignorance or deceit" as to the existence of the intervening lien, but noted that "no comparable factors" were "present in the case at bar."  90 N.H. at 564 (quotation marks omitted).  The court then separately discussed International Trust, supra, as "stand[ing] for the proposition that where the acts of the parties are not legally effective to accomplish the acts which they intended, equity may intervene to correct the mistake and produce the intended result when the rights of third parties will not be affected thereby."[9]  Id.  But the court noted that this theory did not apply there either, because there was "no indication that the parties intended their acts to have any other results other than those which would normally follow from them by operation of law."  Id.

[9]While, at first blush, restoring the discharged mortgage to a position of priority over the intervening liens would seem to affect the rights of those lienholders, this is not the sort of "prejudice" (which, after all, would result from every instance of equitable restoration) that makes the relief unavailable. Instead, there is an absence of prejudice--and therefore a potential for equitable restoration--so long as the intervening lienholders did not rely on the mistaken discharge.  See Caron, 90 N.H. at 564; Int'l Trust, 70 N.H. at 119; accord Progressive, 79 F.3d at 1237.  The government does not argue to the contrary.

Caron strongly suggests, then, that to obtain equitable restoration of a mortgage discharged by mistake (as opposed to a mortgage discharged in the face of intervening liens), a mortgagee need show only that the mortgage was discharged by mistake (and that the intervening lienholders have not relied on the mistaken discharge, see note 9, supra).  So far as this court can tell from its research, the New Hampshire Supreme Court has never held that the negligent character of the mistake bars equitable restoration or, for that matter, any other form of equitable relief premised on mistake.

Indeed, as one leading treatise observes, the proposition "that a mistake resulting from the complaining party's own negligence will never be relieved" in equity "is not sustained by the authorities."  III John Norton Pomeroy, Equity Jurisprudence § 856b, at 339-40 (Spencer W. Symons, ed., 5th ed. 1941).  Instead, to bar equitable relief, "the neglect must amount to the violation of a positive legal duty.  The highest possible care is not demanded."[10]  Id. at 341.  Courts in other jurisdictions have

---

[10]As an example of conduct sufficiently negligent to bar equitable relief, Pomeroy cites an early Supreme Court case refusing to allow recovery to a bank against a depositor who presented the bank with notes purporting to be its own but which had been forged (without its knowledge) by a third party who had subsequently sold them to the presenter (who also did not know the notes had been forged).  Bank of the United States v. Bank of Ga., 23 U.S. 333, 341 (1825).  The Court reasoned that the bank

applied essentially the same formulation in deciding claims for equitable restoration of mistakenly discharged mortgages, referring to it as "culpable negligence." See, e.g., Home Fed. Sav. & Loan Ass'n v. Citizens Bank of Jonesboro, 861 S.W.2d 321, 324 (Ark. Ct. App. 1993); Conn. Nat'l Bank v. Chapman, 216 A.2d 814, 817 (Conn. 1966); 59 C.J.S. Mortgages § 260, at 307 (1998).

Again, there is no reason to believe New Hampshire would apply a different standard.  Thus, any negligence by Conseco in recording the discharge will not bar its claim for equitable reinstatement unless it rises to the level of culpable negligence.  "Whether or not a plaintiff will be barred of remedy in equity against the effect of mistake because of his negligence depends to a large extent upon the circumstances of the particular case."  Conn. Nat'l Bank, 216 A.2d at 817 (citing Pomeroy, supra).  As already discussed, though, the summary judgment record contains little if any admissible evidence as to the circumstances surrounding the recording of the discharge.

---

was "bound to know its own paper, . . . and must be presumed to use all reasonable means . . . to secure itself against forgeries . . . .  Its own security, not less than that of the public, requires such precautions."  Id. at 343.

Whether those circumstances amount to culpable negligence on the part of Conseco, then, is yet another genuine issue for trial.[11]

## IV.   **Conclusion**

For the foregoing reasons, Green Tree's motion for summary judgment[12] is DENIED.

**SO ORDERED.**

_____
Joseph N. Laplante
United States District Judge

Dated:  April 1, 2011

cc:  Jeffrey J. Hardiman, Esq.
     Austin L. Furman, Esq.
     Albert E. Souther, Esq.

---

[11]The government argues, on the last page of its brief, that the court should not only deny Green Tree's motion for summary judgment, but enter summary judgment for the government.  A party seeking summary judgment, however, must file a separate motion to that effect; it is not enough simply to request that relief in the objection to the other side's motion.  See L.R. 7.1(a)(1) ("Objections to pending motions and affirmative motions for relief shall not be combined into a single filing.").  So the government's request to enter summary judgment against Green Tree must be denied for that reason alone.

[12]document no. 15.